IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(Orlando Division)

Case No.: _____

KIMBERLY VANDERBILT,
in her individual capacity, and

WINSTON DECAMBRE,
in his individual capacity,

Plaintiffs,

v.

ORANGE COUNTY SHERIFF'S OFFICE,
a governmental agency under the laws of Florida,

DEPUTY JEREMY GATZY,
in his individual capacity, and

DEPUTY DERRICK FARIAS RIOS,
in his individual capacity,

Defendants.

_____/

## **VERIFIED COMPLAINT AND JURY DEMAND**

COMES NOW, Plaintiffs, KIMBERLY VANDERBILT[1] and WINSTON DECAMBRE, in their individual capacities, by and through undersigned counsel, and sues Defendants, ORANGE COUNTY SHERIFF'S OFFICE, a government agency under the laws of Florida, DEPUTY JERMEY GATZY, in his individual capacity, and DEPUTY DERRICK FARIAS RIOS, in his individual capacity, for the violation of the Plaintiffs' constitutional rights and seizure of the Plaintiffs' personal property, a canine named "Audi." The following is stated in support thereof:

---

[1] Kimberly Vanderbilt legally changed her married name, "DeCambre," to her maiden name "Vanderbilt."

## I. <u>NATURE OF THE ACT</u>

1.    This is a civil action brough pursuant to 42 U.S.C. § § 1983 and 1988 for relief through compensatory damages and attorney's fees stemming from Defendants' violations of Plaintiffs' rights guaranteed by the Fourth Amendment of the Constitution of the United States and Article I Section 12 of the Florida Constitution.

2.    Defendants conduct under the color of state law proximately cause the deprivation of Plaintiffs' federally protected rights.

## II. <u>JURISDICTION AND VENUE</u>

3.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983 and 1988, and the laws of the State of Florida under Art. 1 § 12 of the Florida Constitution. Jurisdiction is conferred upon this Court pursuant to 11 U.S.C. § 1331 and 28 U.S.C. § 1367.

4.    Venue is proper in the Middle District of Florida, under 28 U.S.C. § 1391. All events alleged herein occurred within the State of Florida, and all the parties are residents within this judicial district.

## III. <u>PARTIES</u>

5.    Plaintiff KIMBERLY VANDERBILT (hereinafter "KIMBERLY") is a homeowner and resident in the City of Orlando, Orange County, Florida.

6.    At all times material hereto, KIMBERLY was, and still is, a caregiver for a canine named Audi.

7.    WINSTON DECAMBRE (hereinafter "WINSTON") is a resident in the City of Orlando, Orange County, Florida.

8.    At all times material hereto, WINSTON was, and still is, the registered owner and caregiver for a canine named Audi.

9.      At all times material hereto, Defendant, JEREMY GATZY (hereinafter "GATZY"), was acting under color of the law as a deputy sheriff for Orange County, Florida, in the course of carrying out the actions and omissions that violated Plaintiffs' rights.

10.     At all times material hereto, Defendant, DERRICK FARIAS RIOS (hereinafter "FARIAS RIOS"), was acting under color of the law as a deputy sheriff for Orange County, Florida, in the course of carrying out the actions and omissions that violated Plaintiffs' rights.

11.     Defendant, ORANGE COUNTY SHERIFF'S OFFICE (hereinafter "OCSO") was the employing agency of the Defendant Deputies, and was responsible for their training, supervision, and conduct. OCSO was also responsible for enforcing the rules and regulations of OCSO so that the personnel of OCSO obey the laws of the United States and of the State of Florida.

## IV. <u>FACTUAL ALLEGATIONS</u>

12.     At all times material hereto, WINSTON owned a three-year-old female canine, named "Audi."

13.     At all times material hereto, Audi was, and still is, a family companion pet; a sentient, loving, and friendly dog who would peacefully walk throughout her neighborhood with Plaintiffs.

14.     Audi has no history of violating animal control provisions or acting in an aggressive manner within the City of Orlando, or elsewhere.

15.     At all times hereto, Plaintiffs resided at real property located at 1867 Yukon Drive, Orlando, Orange County, Florida 32818 (hereinafter "Plaintiffs' home").

16.     The north gate leading into the backyard of Plaintiffs' home has a prominent metal cutout of a dog on top.

17.      There is a posted warning sign that states "BEWARE OF THE DOG" on the side rear window located in the backyard of Plaintiffs' home.

 

18.     The signs are conspicuously displayed at Plaintiffs' home in a manner to put anyone on notice that canines reside on the property.

19.     Plaintiffs' canines, including Audi, reside within the home.

20.     Plaintiffs posted notices outside the home due to the canines' ability to have access to the gated backyard through a doggy door.

21.     Plaintiffs ensure that the gated backyard is sanitary and clean, often picking up and disposing of canine waste.

22.     Plaintiffs have converted an outdoor shed located in the backyard of the Plaintiffs' home to a doghouse for the canines.

*May 30, 2018 Incident*

23.     On May 30, 2018, a warrant was issued for the arrest of Leroy Deleon King III, for alleged robbery via "sudden snatching" an iPhone.

24.     On May 30, 2018, OSCO deputies received a tip that Leroy Deleon King III may be located

at 1868 Wayside Drive, Orlando, Orange County, Florida 32818 ("1868 Wayside Drive").

25.     1868 Wayside Drive is located directly behind the Plaintiffs' home.



26.     On May 30, 2018, OCSO deputies arrived within the vicinity of 1868 Wayside Drive in

order to serve the warrant on Leroy Deleon King III.

27.     GATZY with K9 Draco and FARIAS RIOS arrived within the vicinity of the Plaintiffs'

home.

28.     GATZY with K9 Draco and FARIAS RIOS intended to enter the Plaintiffs' gated backyard

to observe the rear of 1868 Wayside Drive.

29.   When GATZY with K9 Draco and FARIAS RIOS arrived at the Plaintiffs' home, the inside house lights were on and cars were present in the driveway.

30.   It was clear that the Plaintiffs were within their home at 1867 Yukon Drive.

31.   GATZY and FARIAS RIOS failed to seek consent to enter onto the private property of the Plaintiffs.

32.   GATZY with K9 Draco and FARIAS RIOS made the conscious decision to go through the North gate, disregarding the conspicuous dog cutout, and entered the gated backyard of the Plaintiffs' home.

33.   GATZY with K9 Draco and FARIAS RIOS continued their entry further into the backyard of the Plaintiffs' home despite the "BEWARE OF THE DOG" sign conspicuously displayed on the property.

34.   GATZY and FARIAS RIOS consciously disregarded the signs advising that canines are currently on the premises.

35.   During entry into the gated backyard of the Plaintiffs' home, FARIAS RIOS made eye contact with KIMBERLY through her bedroom window which faces the backyard.

36.   KIMBERLY opened her bedroom window to ask the law enforcement officers why they were on her property.

37.   FARIAS RIOS gestured KIMBERLY to refrain from speaking by placing his finger to his lips.

38.   GATZY with K9 Draco and FARIAS RIOS continued entry into the gated backyard of the Plaintiffs' home without giving KIMBERLY an opportunity to voice her objection to their presence on her private property.

39.     As a direct result FARIAS RIOS' actions, KIMBERLY was prevented from inquiring the reason for their presence on her property.

40.     As a direct result FARIAS RIOS' actions, KIMBERLY was prevented from notifying the deputies of the presence of the canines on the property.

41.     As a direct result of GATZY with K9 Draco and FARIAS RIOS' continued entry into the gated backyard of the Plaintiffs' home, KIMBERLY was prevented from ensuring that Audi was safely inside the house and not in the backyard.

42.     Upon information and belief, there were no exigent or emergency circumstances that required GATZY with K9 Draco and FARIAS RIOS to enter the gated backyard of the Plaintiffs' home without consent of the property owner.

43.     Upon information and belief, there were no exigent or emergency circumstances that required GATZY with K9 Draco and FARIAS RIOS, to enter the gated backyard of the Plaintiffs' home without ensuring that the personal property of the owner, the canines, were secure.

44.     During this time, other OCSO deputies made contact with a resident of 1868 Wayside Drive and the resident denied having any knowledge of the suspect Leroy Deleon King III.

45.     KIMBERLY was disturbed by the sight of armed deputies and a K9 in her gated backyard and quickly went to locate WINSTON and the family canines.

46.     KIMBERLY assumed that the OCSO deputies had notified WINSTON of their presence on the property without her knowledge.

47.     KIMBERLY walked towards WINSTON's room to ask if he secured the family canines in the home.

48.     As KIMBERLY was walking to WINSTON's room, she heard multiple gunshots originating from her backyard.

49.    Upon information and belief, when GATZY with K9 Draco and FARIAS RIOS entered into the gated backyard of the Plaintiffs' home, the family canines were sleeping in their outdoor doghouse.

50.    The canines exited the doghouse and approached GATZY with K9 Draco and FARIAS RIOS within the gated backyard.

51.    Audi is a medium sized canine and considerably smaller than K9 Draco.

52.    GATZY and FARIAS RIOS failed to retreat from the gated backyard of the Plaintiffs' home when approached by the canines on the property.

53.    GATZY and FARIAS RIOS failed to utilize any non-lethal methods of deterring the canines' approach.

54.    Rather, GATZY and FARIAS RIOS discharged their OCSO assigned firearms and collectively shot eight (8) rounds directly aimed at the canines.

55.    The deputies did not strike the male canine, who became frightened and ran away to another area of the yard.

56.    The deputies struck Audi multiple times with the deadly force of their firearms.

57.    After hearing gunshots, KIMBERLY immediately ran to her bedroom window and saw her canine Audi lying down bleeding out.

58.    KIMBERLY then immediately ran outside.

59.    After hearing gunshots, WINSTON immediately ran out the backdoor of the house and an OCSO deputy pointed his firearm at WINSTON, then at the Plaintiffs' male canine.

60.    WINSTON kept his hands up in the air pleading with the OCSO deputy to not shoot the male canine.

61.    WINSTON was emotionally distraught at the sight of his bleeding canine, the fear of his male canine being shot, and the fear of having a firearm pointed at him.

62.    KIMBERLY was emotionally distraught at the sight of her bleeding canine, the fear of her male canine being shot, and the fear of her son being shot by an OCSO deputy that was pointing a gun at WINSTON.

63.    GATZY placed K9 Drako into his patrol vehicle, while WINSTON and another deputy began applying pressure to the gunshot wounds on Audi.

64.    WINSTON wept and consoled Audi as he attempted to slow the bleeding.

65.    KIMBERLY begged GATZY and FARIAS RIOS to transport Audi to an emergency veterinary clinic.

66.    OCSO deputies declined her pleas, and advised that Orange County Animal Control ("Animal Control") needed to arrive at the scene and make a report.

67.    Animal Control arrived at the Plaintiffs' home approximately twenty minutes after Audi was shot.

68.    The delay prevented the Plaintiffs from seeking immediate emergency veterinary care for Audi.

69.    KIMBERLY and WINSTON were still emotionally distraught when Animal Control arrived.

70.    Due to their emotional distress, KIMBERLY and WINSTON had difficulty concentrating on the Animal Control Officer's questions.

71.    The Animal Control Officer wrote a report and refused to transport Audi.

72.    The Animal Control Officer advised KIMBERLY of a location to drive Audi for treatment that was approximately thirty-five minutes away.

73.     KIMBERLY advised that it was too far, as Audi needed lifesaving treatment immediately and was suffering.

74.     The Animal Control Officer advised of a closer emergency veterinarian and required KIMBERY and WINSTON to personally transport Audi for emergency veterinary care.

75.     KIMBERLY wrapped Audi in a blanket and WINSTON held Audi to slow the bleeding from the gunshot wounds.

76.     Upon examination at the emergency veterinarian clinic, the Plaintiffs were informed that Audi needed immediate surgery and hospitalization to treat her injuries.

77.     The Plaintiffs were advised that they needed to consent to the emergency surgery and pay a one-thousand-dollar ($1,000.00) deposit prior to the surgery taking place.

78.     The Plaintiffs did not have the funds readily available and were emotionally distraught, begging for the veterinarian to perform the lifesaving surgery regardless of their inability to pay up front.

79.     After much discussion and delay, OCSO deputies advised the veterinarian to perform the surgery.

80.     Audi survived the surgery but required extensive in-home care afterwards due to nerve damage, remaining bullet fragments, and gastrointestinal complications due to the multiple gunshot wounds.

81.     As a result of the incident, WINSTON missed multiple weeks of work to care for Audi, who could not walk and needed assistance to relive herself.

82.     WINSTON and KIMBERLY experienced, and still experience, emotional distress as a result of GATZY and FARIAS RIOS' actions.

83.     As a result of his emotional distress, WINSTON was unable to sleep for weeks following the May 30, 2018 incident.

84.     WINSTON has developed anger and anxiety as a result of this incident and subsequently does not feel safe in the presence of law enforcement.

85.     As a result of her emotional distress, KIMBERLY was unable to sleep for weeks following the May 30, 2018 incident.

86.     KIMBERLY has distressing flashbacks to the sight of Audi bleeding and a gun being pointed at her son, and as a result, does not feel safe in the presence of law enforcement.

87.     Audi continues to have anxiety and will become fearful and immobile at the sight of law enforcement officers during walks around the neighborhood.

88.     Audi continues to suffer from gastrointestinal issues due to gunshot wounds in her gut, nerve damage, and a permanent limp due to bullet fragments remaining in her body.

89.     While Audi is still a much-loved member of the Plaintiffs' family, Audi is not the same canine and companion to WINSTON as she was before she was physically injured as a direct result of GATZY and FARIAS RIOS' actions of discharging their firearms and shooting the canine.

### *Orange County Sheriff's Office Policies and Procedures*

#### *A. Citizen Rights*

90.     OCSO policies and procedures mandate a strong commitment to the community and enhancement of the quality of life throughout Orange County, Florida.

91.     Citizens of Orange County, Florida have a right to an enhanced quality of life, which includes the right to not have their property unreasonably damaged.

92.     The unreasonable damage to property is a violation of the standard operating procedures of OCSO, state, and federal laws.

93.     Citizens of Orange County, Florida have a right to an enhanced quality of life, which includes the right to withhold consent to law enforcement officers on their private property, absent exigent circumstances.

94.     The entry of law enforcement officers on private property without consent of the property owner and absent exigent circumstances is a violation of the standard operating procedures of OCSO, state, and federal laws.

95.     Citizens of Orange County, Florida have a right to an enhanced quality of life, which includes the right to not be fearful of law enforcement officers violating their civil rights.

96.     Actions of law enforcement officers that reasonably make a citizen fearful of the violation of their civil rights is a violation of the standard operating procedures of OCSO, state, and federal laws.

97.     OCSO policies and procedures mandate that personnel will comply with the laws, ordinances, rules, governing the agency, and also the United States Constitution, the State of Florida Constitution, and any subdivision constitution.

98.     OCSO policies and procedures mandate that employees cherish and protect the rights, liberties, and freedoms of all, as granted by the United States and Florida constitutions.

99.     Citizens of Orange County, Florida have a right to be free from unreasonable searches.

100.    Unreasonable searches are a violation of the standard operating procedures of OCSO, state, and federal laws.

101.    Citizens of Orange County, Florida have a right to be free from unreasonable entry unto their private property.

102.    Unreasonable entry unto private property is a violation of the standard operating procedures of OCSO, state, and federal laws.

103.     Citizens of Orange County, Florida have a right to be free from unreasonable seizures of person and personal property.

104.     Unreasonable seizures of person and personal property is a violation of the standard operating procedures of OCSO, state, and federal laws.

*B. Use of K9 Teams*

105.     OCSO policies and procedures mandates that K9 teams be deployed using great caution and only after careful consideration of the circumstances.

106.     A K9 team deployed without consideration of the circumstances is in violation of the standard operating procedures of OCSO.

107.     OCSO policies and procedures mandates that K9 teams are authorized to be used for: tracking, searching, crowd control, public relations, and public safety.

108.     A K9 team deployed for any other purpose not specifically authorized by OCSO is a violation of the standard operating procedures of OCSO.

109.     OCSO policies and procedures mandates a K9 can be used for criminal apprehension after considering: the severity of the crime, whether the suspect poses an immediate threat, whether the suspect is resisting, or whether the suspect evading arrest by flight.

*C. Use of Force*

110.     OCSO policies and procedures prohibit the use of more force than is reasonably necessary based on the circumstances of a situation.

111.     The use of more force than is reasonably necessary based on the circumstances of a situation is a violation of the standard operating procedures of OCSO.

112.     OCSO policies and procedures mandate that the use and degree of force depend on the characteristics of the living being it is used against.

113.    The failure to consider the characteristics of the living being upon which deadly force is used against is a violation of the standard operating procedures of OCSO.

114.    OCSO policies and procedures permits deadly force only when there is a high potential for great bodily harm or death, and when deadly force is a last resort.

115.    The use of deadly force when there is not a high potential for great bodily harm or death is a violation of the standard operating procedures of OCSO.

116.    The use of deadly force as a first resort is a violation of the standard operating procedures of OCSO.

117.    OCSO policies and procedures define deadly force as a force that is likely to cause death or great bodily harm, permanent disability, and permanent disfigurement.

118.    OCSO policies and procedures define deadly force as including the firing of a firearm in a direction regardless of intent to kill or cause great bodily harm.

119.    OCOS policies and procedures mandate that deputies must intervene if they anticipate or observe any unreasonable, unnecessary, or disproportionate use of force.

120.    The failure of a deputy to intervene if he or she anticipate or observe any unreasonable, unnecessary, or disproportionate use of force is a violation of the standard operating procedures of OCSO.

121.    OCSO policies and procedures provide that other methods to subdue potential harm should be used before deadly force, including but not limited to chemical agent aerosol spray, expandable batons, flashlights, electronic control devises, or other less lethal weapons at their disposal.

122.    The failure to use other methods to subdue potential harm prior to deadly force is a violation of the standard operating procedures of OCSO.

123.    OCSO policies and procedures mandate that less lethal weapons should be considered where their use can reduce injury to officers, citizens, or suspects.

124.    OCSO policies and procedures define a less lethal weapon as a projectile designed to stun, temporary incapacitate, or cause temporary discomfort without penetrating the body.

125.    OCSO policies and procedures state that less lethal impact weapons can achieve the goal of protection of life and restoring order.

126.    OCSO policies and procedures mandate that lethal impact weapons should be deployed only after all other options to control or apprehend a suspect have been considered unless exigent circumstances are present.

127.    The failure to use other less lethal impact weapons to control or apprehend a suspect, absent exigent circumstances, is a violation of the standard operating procedures of OCSO.

128.    OCSO policies and procedures state that weapons can not be used or handled in a careless or imprudent manner.

129.    The use of weapons in a careless or imprudent manner is a violation of the standard operating procedures of OCSO.

## D. Interactions with Animals

130.    OCSO policies and procedures define a dangerous animal as one that poses a clear and imminent danger or threat to public safety due to vicious behavior, or rabies.

131.    An animal that does not exhibit characteristics of rabies of vicious behavior cannot be defined as dangerous by OCSO.

132.    OCSO policies and procedures defines domestic animals as tame animals, such as dogs, that are kept as pets in homes.

133.     Domestic animals are classified as property of their owners and therefore, protected under state and federal law from unreasonable seizures.

134.     OCSO policies and procedures mandate that killing or seriously wounding a dangerous animal is permitted only when all other dispositions are impractical.

135.     The killing or serious wounding of a non-dangerous animal is a violation of the standard operating procedures of OCSO, state, and federal law.

136.     The killing or serious wounding of a dangerous animal when other dispositions are practical is a violation of the standard operating procedures of OCSO, state, and federal law.

137.     OCSO policies and procedures mandate that deputies may discharge their weapon to kill or seriously injure a dangerous animal, but only after all reasonable means of disposition have been exhausted.

138.      The use of discharging a weapon to kill or seriously injure a non-dangerous animal is a violation of the standard operating procedures of OCSO, state, and federal law.

139.     The use of discharging a weapon to kill or seriously injure a dangerous animal before all reasonable means of disposition have been exhausted is a violation of the standard operating procedures of OCSO, state, and federal law.

140.     According to OCSO policies and procedures, when killing or seriously wounding a dangerous animal, deputies should contact the sergeant and obtain approval when possible, and also exhaust all efforts to notify the owner for permission to destroy the animal.

141.     The failure to exhaust all efforts to notify the owner prior to destroying the domestic animal is a violation of the standard operating procedures of OCSO, state, and federal law.

### Violations of Orange County Sheriff's Office Policies and Procedures

#### A. Citizen Rights

142.    On May 30, 2018, GATZY and FARIAS RIOS failed to follow the policies and procedures set out by the OCSO regarding Citizen Rights.

143.    As a direct and proximate cause of failing to follow the policies and procedures set out by the OCSO regarding Citizen Rights, the Plaintiffs' canine, Audi, was unreasonably and permanently damaged.

144.    GATZY and FARIAS RIOS entered the Plaintiffs' gated and private backyard without consent and absent exigent circumstances.

145.    FARIAS RIOS precluded KIMBERLY from giving consent or voicing her objection by motioning for her to remain silent after she observed the deputies in the Plaintiffs' gated private backyard.

146.    FARIAS RIOS precluded KIMBERLY from advising the deputies of the presence of canines on the property by motioning for her to remain silent after she observed the deputies in her gated private backyard.

147.    GATZY and FARUAS RIOS consciously disregarded multiple warning signs indicating canines were on the property.

148.    GATZY and FARUAS RIOS consciously disregarded that the Plaintiffs were home and therefore, the opportunity to ask permission before entry into the gated private backyard.

149.    As a direct and proximate cause of FARIAS RIOS' actions, KIMBERLY was unable to secure the family canines within the Plaintiffs' home, resulting in the deputies' discharge of their firearms, an action that severely and permanently injured Audi.

150.     KIMBERLY and WINSTON are still coping with the May 30, 2018 incident and lingering effects that occurred as a result, as they are emotionally scarred, no longer feel safe in their home, and no longer feel protected by law enforcement.

151.     GATZY and FARIAS RIOS' actions have resulted in the Plaintiffs being reasonably fearful of their civil rights being violated by law enforcement officers.

152.     GATZY and FARIAS RIOS' actions did not protect the rights, liberties, and freedoms of the Plaintiffs to be free from unreasonable searches.

153.     GATZY and FARIAS RIOS' actions did not protect the rights, liberties, and freedoms of the Plaintiffs to be free from unreasonable seizures.

154.     GATZY and FARIAS RIOS failed to comply with the United States Constitution and the State of Florida Constitution.

155.     As a direct and proximate cause of GATZY and FARIAS RIOS's actions on May 30, 2018, the Plaintiffs' civil rights to be free from unreasonable searches and seizures were violated.

*B. Use of K9 Teams*

156.     On May 30, 2018, GATZY failed to follow the policies and procedures set out by the OCSO in regard to the Use of K9 Teams.

157.     GATZY failed to use great caution and careful consideration of the present circumstances when entering into the gated private backyard of a residence with K9 Drako without notifying the homeowner or requesting permission.

158.      GATZY failed to use great caution and careful consideration of the circumstances when entering into the gated private backyard of a residence with K9 Drako that contained multiple signs indicating canines were on the premises.

159.    GATZY entered the gated private backyard of a residence with K9 Drako for the purpose

of observing the backyard of the house directly behind the Plaintiffs' home.

160.    This intended purpose was not for tracking, searching, crowd control, public relations, and

public safety and therefore, K9 Drako should not have accompanied GATZY into the Plaintiffs'

gated private backyard.

161.    This intended purpose was not for criminal apprehension and therefore, K9 Drako should

not have accompanied GATZY into the Plaintiffs' gated private backyard.

*C. Use of Force*

162.    On May 30, 2018, GATZY and FARIAS RIOS failed to follow the policies and procedures

set out by the OCSO in regard to Use of Force.

163.    GATZY and FARIAS RIOS resorted to deadly force immediately upon being approached

by the canines on the property.

164.    GATZY and FARIAS RIOS were put on notice that it was reasonably likely that canines

may reside on the property and may be in the gated backyard of the Plaintiffs' home.

165.    Neither GATZY or FARIAS RIOS attempted to intervene and require caution prior to entry

into the gated backyard, as it was reasonable that there would be an anticipated use of force if

approached by canines on the property.

166.    GATZY and FARIAS RIOS failed to utilize any less lethal weapons in the event of coming

into contact with canines on the property.

167.    GATZY and FARIAS RIOS failed to consider the use of less lethal weapons when such

use could have reduced injury to the Plaintiffs.

168.   GATZY and FARIAS RIOS failed to consider the use of less lethal weapons when such use could have achieved the goal of protecting Audi's life, instead of leaving the canine permanently damaged.

169.   GATZY and FARIAS RIOS failed to use other methods to subdue potential harm before resorting to deadly force, including but not limited to the failure to use chemical agent aerosol spray, expandable batons, flashlights, electronic control devises, or other less lethal weapons at their disposal.

170.   GATZY and FARIAS RIOS failed to attempt to deter the canines by discharging their firearms away from the canines in order to frighten them.

171.   GATZY and FARIAS RIOS used more force than was reasonably necessary to deter the domestic canines that were awakened by their entry into the Plaintiffs' gated backyard.

172.   GATZY and FARIAS RIOS failed to consider the characteristics of the canines upon which deadly force was used against.

173.   Audi is not a large canine and does not have characteristics that would require the use of lethal force immediately upon confrontation.

174.   Audi did not present a high potential for great bodily harm or death to the deputies or K9 Drako.

175.   GATZY and FARIAS RIOS' use of weapons was careless and/or imprudent.

176.   GATZY and FARIAS RIOS used deadly force as a first resort, which directly contravenes the OCSO policies and procedures.

177.   As a result of the use of deadly force as a first resort, the Plaintiffs' canine, Audi, has been permanently damaged.

178.     The use of deadly force as a first result was unduly excessive and a violation of the Plaintiffs' rights to be free from unreasonable seizures.

*D. Interactions with Animals*

179.     On May 30, 2018, GATZY and FARIAS RIOS failed to follow the policies and procedures set out by the OCSO regarding Interactions with Animals.

180.     Audi is a domestic animal; in that she is tame and resides within the Plaintiffs' home.

181.     Audi was not exhibiting characteristics of rabies when she approached GATZY and FARIAS RIOS in the gated backyard.

182.     Audi was not exhibiting vicious behavior when she approached GATZY and FARIAS RIOS in the gated backyard.

183.     Audi did not pose a clear and imminent danger or threat to public safety when she approached GATZY and FARIAS RIOS in the gated backyard.

184.     Audi was not a dangerous animal.

185.     GATZY and FARIAS RIOS failed to use any other non-lethal means practical to deter Audi from approaching them in the gated backyard.

186.     GATZY and FARIAS RIOS first utilized to deadly force against Audi.

187.     GATZY and FARIAS RIOS seriously wounded Audi when other dispositions were practical, such as discharging their firearms nearby to frighten Audi or using less lethal weapons.

188.     GATZY and FARIAS RIOS failed to exhaust all reasonable means of disposition prior to resorting to discharging their weapons in an attempt to kill or seriously injury Audi.

189.     GATZY and FARIAS RIOS failed to make any attempts to receive consent from KIMBERLY to enter the gated backyard, and in fact FARIAS RIOS precluded KIMBERLY from communicating with the deputies and notifying them of the presence of the canines.

***Failure to Ensure Proper Training and Compliance with Standard Operating Procedures***

190.     OCSO failed to properly train GATZY and FARIAS RIOS to ensure compliance with their

standard operating procedures.

191.     OCSO's failure to properly train GATZY and FARIAS RIOS resulted in the disregard for

policies and procedures set in place to protect the civil rights of citizens such as KIMBERLY and

WINSTON.

192.     As a result, the civil rights and constitutional protections afforded to KIMBERLY and

WINSTON were violated.

***Compliance with Pre-Suit Notification***

193.     Plaintiffs have complied with state law, Fla. Stat. Section 768.28(6)(a), by timely serving

a notice of the claim to the Department of Financial Services on or about January 6, 2020.

194.     Plaintiffs have complied with state law, Fla. Stat. Section 768.28(6)(a), by timely serving

a notice of the claim to Defendant OCSO on or about January 7, 2020.

195.     Defendant OCSO failed to respond to the notice within the statutory six-month period and

has therefore subjected itself to the jurisdiction of this Honorable Court.

## COUNT I
## 42 U.S.C. § 1983 FOURTH AMENDMENT VIOLATION OF RIGHT TO BE FREE FROM UNREASONABLE SEARCH AGAINST GATZY AND FARIAS RIOS

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

196.     This Count is brought against Defendant JEREMY GATZY and Defendant DERRICK

FARIAS RIOS, each in their individual capacities.

197.     As described herein, GATZY and FARIAS RIOS while acting under the color of law,

unlawfully deprived the Plaintiffs of the rights, privileges, liberties, and immunities secured by the

Constitution of the United States of America.

198.    GATZY and FARIAS RIOS unreasonably, recklessly, and excessively infringed upon an reasonable expectation of privacy without any reasonable justification or probable cause for entering the backyard.

199.    GATZY and FARIAS RIOS acted in an excessive and shocking manner, resulting in a reckless disregard the Plaintiffs' rights.

200.    These actions were in violation of the Plaintiffs' rights under the Fourth Amendment of the United States Constitution.

201.    The Fourth Amendment of the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the pace to be searched, and the persons or things to be seized. U.S. Const. amend. IV

202.    GATZY and FARIAS RIOS knew, or should have known, and understood that the homeowner had a constitutionally protected expectation of privacy.

203.    GATZY and FARIAS RIOS, prior to the entry into the gated backyard, knew or should have known that they did not have the legal right to enter the Plaintiffs' gated backyard, when no warrant was issued to enter the premise, no probable cause supported by an affidavit existed, and other procedures that were required to be taken before the decision to enter a residence were not followed.

204.    GATZY and FARIAS RIOS acted recklessly, given that the Plaintiffs were home and available to give consent to enter their backyard, the circumstances related to the apprehension of Leroy Deleon King III were non-exigent, and the backyard was enclosed by a fence and secured by a gate.

205.     GATZY and FARIAS RIOS's conduct was arbitrary, unreasonable, and deliberately indifferent to the constitutional rights of the Plaintiffs, as their investigation lacked the required formal process.

206.     While acting under the color of law, GATZY and FARIAS RIOS acted with reckless disregard towards the rights of the Plaintiffs in entering their gated backyard and has violated their Fourth Amendment rights.

207.     GATZY and FARIAS RIOS acted outside their discretionary authority, as deputy's and violated a clearly established constitutional right.

208.     In the alternative, if GATZY and FARIAS RIOS acted within their discretionary authority, they violated a clearly established constitutional right.

209.     As a direct and proximate result of GATZY and FARIAS RIOS' conduct, KIMBERLY and WINSTON  have been damaged in various respects including but not limited to: suffering emotional distress due to the sever nature of the incident as well as no longer feeling safe in their home or protected by law enforcement, all of which are attributable to the deprivation of their constitutional and statutory rights guaranteed by the Fourth Amendment of the Constitution of the United States and protected under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS, respectively, for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

## COUNT II
## 42 U.S.C. § 1983 FOURTH AMENDMENT VIOLATION OF RIGHT TO BE FREE FROM UNREASONABLE SEIZURE AGAINST GATZY AND FARIAS RIOS

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

210.     This Count is brought against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS each in their individual capacities.

211.     As described herein, GATZY and FARIAS RIOS while acting under the color of law, unlawfully deprived the Plaintiffs of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

212.     GATZY and FARIAS RIOS unreasonably, recklessly, and excessively used unnecessary force without any reasonable justification or probable cause when discharging their firearms at Audi.

213.     GATZY and FARIAS RIOS acted in an excessive and shocking manner, exhibiting a reckless disregard for the Plaintiffs' rights.

214.     These actions were in violation of the Plaintiffs' rights under the Fourth Amendment of the Constitution of the United States.

215.     The Fourth Amendment of the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the pace to be searched, and the persons or things to be seized. U.S. CONST. amend. IV

216.     GATZY and FARIAS RIOS, prior to the shooting of Audi, knew, or should have known, and understood that the owner of the canine had a constitutionally protected property interest in Audi.

217.     GATZY and FARIAS RIOS knew or should have known that they did not have the legal right to shoot Audi multiple times when Audi posed no threat to them, other officers, or K9 Drako, and other non-lethal alternatives should have been utilized before the decision to use lethal force was made.

218.     GATZY and FARIAS RIOS acted recklessly given that, the Plaintiffs were home, available, and capable of removing Audi from the backyard or warning of her presence, the location of the incident was in a residential neighborhood, the non-aggressive confrontation related to Leroy Deleon King III, and Audi's small size.

219.     GATZY and FARIAS RIOS' conduct was arbitrary, unreasonable, and deliberately indifferent to the constitutional rights of the Plaintiffs since Audi had neither bitten, nor shown aggression towards either deputies or K9 Drako.

220.     While acting under the color of law, GATZY and FARIAS RIOS acted with reckless disregard towards the rights of the Plaintiffs by shooting Audi and therefore, deprived the Plaintiffs of their property under the Fourth Amendment.

221.     GATZY and FARIAS RIOS acted outside their discretionary authority as deputies and violated a clearly established constitutional right.

222.     In the alternative, if GATZY and FARIAS RIOS acted within their discretionary authority, they violated a clearly established constitutional right.

223.     As a direct and proximate result of GATZY and FARIAS RIOS' conduct, KIMBERLY and WINSTON have been damaged in various respects including but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to the deprivation of their constitutional

and statutory rights guaranteed by the Fourth Amendment of the Constitution of the United States and protected under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS, respectively, for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

**COUNT III**
**FLORIDA CONSTITUTION ARTICLE I § 12 VIOLATION OF RIGHT TO BE FREE FROM UNREASONABLE SEARCH AGAINST GATZY AND FARIAS RIOS**

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

224.   This Count is brought against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS each in their individual capacities.

225.   As described herein, GATZY and FARIAS RIOS while acting under the color of law, unlawfully deprived the Plaintiffs of the rights, privileges, liberties, and immunities secured by the Constitution of the State of Florida.

226.   GATZY and FARIAS RIOS unreasonably, recklessly, and excessively infringed upon a reasonable expectation of privacy without any reasonable justification or probable cause for entering the backyard.

227.   GATZY and FARIAS RIOS acted in an excessive and shocking manner, resulting in a reckless disregard for the Plaintiffs' rights.

228.   These actions were in violation of the Plaintiffs' rights under Article I § 12 of the Florida Constitution.

229.     Article I § 12 of the Florida Constitution provides that:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States.

230.     GATZY and FARIAS RIOS, prior to the entry into the gated backyard, knew, or should have known, and understood that the homeowner had a state constitutionally protected expectation of privacy.

231.     GATZY and FARIAS RIOS knew or should have known that they did not have the legal right to enter the Plaintiffs' gated backyard when no warrant was issued to enter the premise, no probable cause supported by an affidavit existed, and other procedures that were required to be taken before the decision to enter a residence were not followed.

232.     GATZY and FARIAS RIOS acted recklessly given that the Plaintiffs were home, available, and capable of giving consent to enter the backyard, the circumstances related to the apprehension of Leroy Deleon King III were non-exigent, and the Plaintiffs' backyard was enclosed by a fence and secured by a gate.

233.     GATZY and FARIAS RIOS' conduct was arbitrary, unreasonable, and deliberately indifferent to the state constitutional rights of the Plaintiffs since they were investigating without formal process.

234.     While acting under the color of law, GATZY and FARIAS RIOS acted with a reckless disregard towards the rights of the Plaintiffs by entering their backyard and therefore, have violated their rights under Fla. Const. Article I § 12.

235.     GATZY and FARIAS RIOS acted outside their discretionary authority as deputies and violated a clearly established state constitutional right.

236.     In the alternative, if GATZY and FARIAS RIOS acted within their discretionary authority, they violated a clearly established state constitutional right.

237.     As a direct and proximate result of GATZY and FARIAS RIOS' conduct, KIMBERLY and WINSTON have been damaged in various respects including but not limited to: suffering emotional distress due to severe nature of the incident as well as no longer feeling safe in their home or protected by law enforcement, all of which are attributable to the deprivation of their state constitutional rights guaranteed by Article I § 12 of the Florida Constitution.

          **WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS, respectively, for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

## COUNT IV
## FLORIDA CONSTITUTION ARTICLE I § 12 VIOLATION OF RIGHT TO BE FREE FROM UNREASONABLE SEIZURE AGAINST GATZY AND FARIAS RIOS

          Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

238.     This Count is brought against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS each in their individual capacities.

239.     As described herein, GATZY and FARIAS RIOS while acting under the color of law, unlawfully deprived the Plaintiffs of the rights, privileges, liberties, and immunities secured by the Constitution of the State of Florida.

240.     GATZY and FARIAS RIOS unreasonably, recklessly, and excessively used unnecessary force without any reasonable justification or probable cause by discharging their firearms at Audi.

241.     GATZY and FARIAS RIOS acted in an excessive and shocking manner, resulting in a reckless disregard for the Plaintiffs' rights.

242.     These actions were in violation of the Plaintiffs' rights under Article I § 12 of the Florida Constitution.

243.     Article I § 12 of the Florida Constitution provides that:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States.

244.     GATZY and FARIAS RIOS, prior to the shooting of Audi, knew, or should have known, and understood that the owner of the canine had a state constitutionally protected property interest in Audi.

245.     GATZY and FARIAS RIOS knew or should have known that they did not have the legal right to shoot Audi multiple times, when Audi posed no threat to them, other officers, or K9 Drako, and other non-lethal alternatives should have been utilized before the decision to use lethal force was made.

246.     GATZY and FARIAS RIOS acted recklessly given that the Plaintiffs were home, available, and capable of removing Audi from the backyard or warn of her presence, the location of the incident was in a residential neighborhood, the non-aggressive confrontation related to Leroy Deleon King III, and Audi's small size.

247.     GATZY and FARIAS RIOS's conduct was arbitrary, unreasonable, and deliberately indifferent to the state constitutional rights of the Plaintiffs, as Audi had neither bitten nor shown aggression towards either deputy or K9 Drako.

248.     While acting under the color of law, GATZY and FARIAS RIOS acted with a reckless disregard towards the rights of the Plaintiffs by shooting Audi, therefore, depriving the Plaintiffs of their property under Fla. Const. Article I § 12.

249.     GATZY and FARIAS RIOS acted outside their discretionary authority as sheriff's deputies and violated a clearly established state constitutional right.

250.     In the alternative, if GATZY and FARIAS RIOS acted within their discretionary authority, they violated a clearly established state constitutional right.

251.     As a direct and proximate result of GATZY and FARIAS RIOS' conduct, KIMBERLY and WINSTON have been damaged in various respects including but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to the deprivation of their state constitutional and guaranteed by Article I § 12 of the Florida Constitution.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

## COUNT V
## 42 U.S.C. § 1983 VIOLATION AGAINST OCSO

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

252.   This Count is brought against Defendant ORANGE COUNTY SHERIFF'S OFFICE.

253.   As described above, Defendant OCSO failed to properly train GATZY and FARIAS RIOS in the policies and procedures, resulting in the Plaintiffs' constitutional rights being violated.

254.   Acting under the color of law and pursuant to policy and procedures as described above, OCSO knowingly, recklessly, or with deliberate indifference to the Plaintiffs' rights, failed to provide adequate instruction, supervision, control, equipment, training, and/or discipline on a regular and continuous basis to sheriff's deputies regarding their duties to refrain from unlawfully shooting canines and using excessive force against canines without first ensuring that all effective and reasonable means of containing the animal have been exhausted.

255.   OCSO had, or should have had, specific knowledge of said policies and procedures and therefore, exhibited a deliberate indifference to the unreasonable risk of property damage or loss when such policies and procedures were not complied with.

256.   OCSO, prior to the incident, knew or should have known that shooting a family canine without justification was a violation of the canine owner's property rights protected by the United States Constitution; and that permanently injuring a canine by lethal force constitutes a seizure based on meaningful interference with an individual's possessory interest of property under the Fourth Amendment.

257.   The Fourth Amendment of the United States Constitution provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the pace to be searched, and the persons or things to be seized. U.S. Const. amend. IV.

258.   OCSO had an affirmative duty to prevent, or aid in preventing, the commission of such wrongs but instead, knowingly, recklessly, or with deliberate indifference to the Plaintiffs' rights, OCSO fail to uphold said duty.

259.   OCSO procedures for use of force are the professional and legal standards of the agency, used to ensure that personnel only engage in the level of force objectively reasonable to perform their official duties.

260.   OCSO knew or should have known that deputies would shoot companion animals without first utilizing effective non-lethal means, and still failed to act to require any specific training, supervision, or oversight to actually protect the property rights of citizens against having their companion animals unlawfully, needlessly, or unjustifiably injured by OCSO deputies.

261.   As a direct and proximate result of such conduct, KIMBERLY and WINSTON have been damaged in various respects, including but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to the deprivation of their constitutional and statutory rights guaranteed by the Fourth Amendment of the Constitution of the United States and protected under 42 U.S.C. § 1983.

   **WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant ORANGE COUNTY SHERIFF'S OFFICE for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

## COUNT VI
## FLORIDA CONSTITUTION ARTICLE I § 12 VIOLATION AGAINST OCSO

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

262.    This Count is brought against Defendant ORANGE COUNTY SHERIFF'S OFFICE.

263.    As described above, Defendant OCSO failed to properly train GATZY and FARIAS RIOS in the policies and procedures resulting in the Plaintiffs' constitutional rights being violated.

264.    Acting under the color of law and pursuant to policy and procedures as described above, OCSO knowingly, recklessly, or with deliberate indifference to the Plaintiffs' rights, failed to provide adequate instruction, supervision, control, equipment, training, and/or discipline on a regular and continuous basis, to sheriff's deputies regarding their duties to refrain from unlawfully using shooting canines and using excessive force against canines without first ensuring that all effective and reasonable means of containing the animal had been exhausted.

265.    OCSO had, or should have had, specific knowledge of said policies and procedures and therefore, exhibited a deliberate indifference to the unreasonable risk of property damage or loss when such policies and procedures were not complied with.

266.    OCSO, prior to the incident, knew or should have known that shooting a family canine without justification was a violation of the canine owner's property rights protected by the Florida Constitution; and that permanently injuring a canine caused by lethal force constitutes a seizure based on meaningful interference with an individual's possessory interest of property under Fla. Const. Article I § 12.

267.    Article I § 12 of the Florida Constitution provides that:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to

be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States.

268.    OCSO had an affirmative duty to prevent, or aid in preventing, the commission of such wrongs but instead, knowingly, recklessly, or with deliberate indifference to the Plaintiffs' rights, OCSO fail to uphold said duty.

269.    OCSO procedures for use of force are the professional and legal standards of the agency, used to ensure that personnel only engage in the level of force objectively reasonable to perform their official duties.

270.    OCSO knew or should have known that the deputies would shoot companion animals without first utilizing effective non-lethal means, and still failed to require any specific policy, training, supervision, and/or oversight to actually protect the property rights of citizens against having their companion animals unlawfully, needlessly, or unjustifiably injured by OCSO deputies.

271.    As a direct and proximate result of such conduct, KIMBERLY and WINSTON have been damaged in various respects, including but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to the deprivation of their constitutional and statutory rights guaranteed by Article I § 12 of the Florida Constitution.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant ORANGE COUNTY SHERIFF'S OFFICE for compensatory and special damages, together with interest, costs and attorney's fees to the extent allowed by law, and any other relief the Court deems just and appropriate.

## COUNT VII
## NEGLIGENCE AGAINST GATZY AND FARIAS RIOS

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

272.    This Count is brought against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS in their individual capacities.

273.    GATZY and FARIAS RIOS owed KIMBERLY and WINSTON a duty of care to act such as reasonable deputies would when confronted by a canine.

274.    GATZY and FARIAS RIOS breached their duty of care by shooting at Audi instead of utilizing non-lethal alternatives as specified in the OCSO policies and procedures.

275.    As a direct and proximate result of such unconstitutional policies and procedures, KIMBERLY and WINSTON have been damaged in various respects including, but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to GATZY and FARIAS RIOS using lethal force.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant JEREMY GATZY and Defendant DERRICK FARIAS RIOS for compensatory and special damages, together with interest, and any other relief the Court deems just and appropriate.

## COUNT VIII
## NEGLIGENCE AGAINST OCSO

Plaintiffs hereby incorporate by reference the allegations contained in Paragraphs 1 through 195 as is fully set forth herein.

276.     This Count is brought against Defendant ORANGE COUNTY SHERIFF'S OFFICE.

277.     OCSO owed KIMBERLY and WINSTON a duty of care to supply the necessary supervision, training, instruction, discipline, control, conduct, and enforce the policies and procedures put in place for deputies when confronted by a canine.

278.     OCSO breached their duty of care by failing to adequately supply the necessary supervision, training, instruction, discipline, control, conduct, and enforce the policies and procedures put in place for deputies when confronted by a canine.

279.     As a direct and proximate result of such unconstitutional policies and procedures, KIMBERLY and WINSTON have been damaged in various respects including, but not limited to: suffering emotional distress due to severe nature of the situation as well as being deprived of Audi as she once was in an uninjured state, all of which are attributable to OCSO's failing to adequately supply the necessary supervision, training, instruction, discipline, control, conduct, and enforce the policies and procedures put in place for deputies when confronted by a canine.

**WHEREFORE**, Plaintiffs, KIMBERLY VANDERBILT and WINSTON DECAMBRE, demand judgment against Defendant ORANGE COUNTY SHERIFF'S OFFICE for compensatory and special damages, together with interest, and any other relief the Court deems just and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants, and enter an order:

(a) Declaring the actions of the Defendants described above as a violation of Plaintiffs' constitutional rights under the Fourth Amendment of the United States Constitution;

(b) Declaring the actions of the Defendants described above as a violation of Plaintiffs' constitutional rights under Article I § 12 of the Florida Constitution;

(c) Requiring the Defendants to implement a non-lethal policy when encountering companion animals;

(d) Awarding Plaintiff compensatory and consequential damages, including damages for emotional distress and loss of intrinsic value in an amount to be determined at trial;

(e) Awarding Plaintiff attorney's fees and the costs associated with this action, including those associated with expert witness fees, on all claims allowed by law;

(f) Awarding Plaintiff pre-judgment and post-judgment interest at the lawful rate; and

(g) Awarding Plaintiff any further relief that this Court deems just and proper, and any other relief as allowed by law.

## <u>PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE</u>

Dated: January ___, 2021

Respectfully Submitted:

Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Marcy@floridaanimallawyer.com

MARCY I. LAHART, P.A.
 207 SE Tuscawilla Road
Micanopy, FL 32667
(352) 545-7001

Heidi Mehaffey, Esq.
Florida Bar No. 118806
Heidi@Hartsell-Law.com
Robert N. Hartsell, Esq.
Florida Bar No. 636207
Robert@Hartsell-Law.com

ROBERT N. HARTSELL, P.A.
61 NE 1st Street, Suite C
Pompano Beach, Florida 33060
(954) 778-1052

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Florida, I declare that I have read the foregoing, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

Kimberly Vanderbilt

State of Florida
County of Orange

The foregoing instrument was sworn to or affirmed and subscribed before me this 12ᵗʰ day of JAN ,2021 by Kimberly Vanderbilt, who is personally known to me or produced FLORIDA D.L. as identification.

Print Name: FERNANDO REYERO

FERNANDO MARTIN REYERO
Notary Public – State of Florida
Commission # GG 182755
My Comm. Expires Feb 5, 2022
Bonded through National Notary Assn.

Notary Public State of FL.
My Commission expires: FEB 5ᵗʰ 2022.

Page 39 of 40

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Florida, I declare that I have read the foregoing, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

_____
Winston DeCambre

State of Florida
County of Orange

The foregoing instrument was sworn to or affirmed and subscribed before me this 11ᵗʰ day of January, 2021 by Winston DeCambre, who is personally known to me or produced FL DL exp 5/15/2029 as identification.

Print Name: Michael A Zamora

Notary Public State of Florida
My Commission expires: 1/30/2022

Notary Public State of Florida
Michael A Zamora
My Commission GG 178890
Expires 01/30/2022